IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **TOMMIE LEE STOREY,** | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 00-C-3219-W |
| **THE CITY OF ALICEVILLE, et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION DENYING SUMMARY JUDGMENT

Before this Court is Defendant City of Aliceville's ("Aliceville") Motion for Summary Judgment. Because of the existence of genuinely disputed factual issues, the Motion for Summary Judgment is due to be denied.

### I. FACTS

On Saturday, May 30, 1998, at approximately 7:30 p.m., Plaintiff Tommie Lee Storey was involved in a serious automobile accident in Aliceville, Alabama. The accident was investigated by Alabama State Trooper Darrick Dorough. During the course of his investigation, Trooper Dorough determined that, at the time of the accident, Plaintiff was intoxicated, and that Plaintiff's blood alcohol level was .27 percent. The trooper's report does not indicate that the Plaintiff was injured. However, there was evidence of blood on the Plaintiff's clothes, and Plaintiff's automobile was severely damaged.

At the accident scene, Plaintiff told the trooper that he was sick and he could not see. Although there was an ambulance on the scene treating the individuals in the other vehicle



involved in the accident, Plaintiff did not receive medical attention.

Plaintiff was transported to the Pickens County Jail where he was booked and given an intoxilyzer test. According to Plaintiff, he told both the trooper and the deputy that he was not feeling well, and that he did not want to take the intoxilyzer test.

Officer David Jackson of the Aliceville Police Department transported Plaintiff to the City of Aliceville Jail. There is no indication that Plaintiff asked the officer for any medical treatment.

Plaintiff was an inmate in the Aliceville City Jail for thirteen (13) days – from May 30, 1998 until June 12, 1998. Plaintiff alleges that his request for medical attention was ignored by the City, the Chief of Police and the City's jail dispatchers. Defendant contends that Plaintiff never asked for medical help. However, Plaintiff offers the testimony of two fellow inmates who contend that they personally asked the jail personnel to provide medical care to Plaintiff. Additionally, Plaintiff was unable to eat the food given to him while in jail, and remained in bed during virtually the entire thirteen-day period of his incarceration. Plaintiff maintains that this information provides further evidence of his need for medical attention while in jail.

On June 21, 1998, nine days after Plaintiff was released from jail, he went to the Pickens County Medical Center where he complained of dizziness and headaches. Two days later, on June 23, 1998, Plaintiff was treated at the DCH Regional Medical Center for an injury to his neck. Dr. Rick McKenzie discovered that Plaintiff had "severe spinal stenosis and the sequelae of spinal cord injury." On June 26, 1998, Plaintiff underwent a posterior cervical laminectomy of C 3,4, & 5. Plaintiff was hospitalized until July 5, 1998.

Dr. McKenzie wrote a letter to Plaintiff's counsel describing Plaintiff's injury as

secondary to his congenital spinal canal stenosis. Additionally, Dr. McKenzie stated that, in his opinion, the delay in medical treatment did not significantly change the plaintiff's outcome or long-term quality of life.

## CONTROLLING LEGAL PRINCIPLES

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). When passing on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.

In order for Plaintiff to maintain a Section 1983 claim against the City of Aliceville, Plaintiff must prove that: (1) he suffered an injury as a result of a constitutional violation; and (2) the City was responsible for that constitutional violation. *Hardin v. Hayes*, 52 F.3d 934 (11th Cir. 1995); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992).

Because this case is confined to municipal liability, Plaintiff must also be able to demonstrate a direct causal link between the City's policy or custom and the alleged constitutional violation. Liability will attach only where a government custom or policy is "the moving force of the constitutional violation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985).

In addition to Plaintiff's allegation of constitutional violations – in particular, a denial of medical treatment while incarcerated – Plaintiff must prove that the jail officials acted with "deliberate indifference" to Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court in *Estelle* articulated the following three-prong test to determine whether

the Eighth Amendment has been violated: (1) whether the plaintiff had a serious medical need; (2) whether the defendant was aware of the plaintiff's serious medical need; and (3) whether the defendant was "deliberately indifferent" to the plaintiff's serious medical need.

## ANALYSIS

Plaintiff has indubitably established that he had a serious medical need. He was involved in a serious motor vehicle accident that required emergency medical personnel to respond. Additionally, Dr. McKenzie established that "at the time of his accident, Mr. Storey suffered a spinal cord injury."

Where the second prong of the three-prong test articulated by the *Estelle* Court is applied to the facts in the case at bar, there are genuine issues of material facts as to whether Defendant was aware of Plaintiff's medical needs. Defendant contends that Plaintiff, at no time, made the City aware of his medical needs. However, Plaintiff has proffered his own testimony that he requested the dispatchers to seek medical help for him. Additionally, Plaintiff has offered evidence from two cell-mates who both contend that they personally sought out medical care for Plaintiff. Moreover, as a matter of common sense, it should have been apparent that Plaintiff required medical attention after being involved in a serious automobile accident – regardless of whether or not Plaintiff made a request for medical attention.

Plaintiff is also required to establish that the City maintains a policy or custom which directly caused his injury. Plaintiff correctly contends that a policy can be created by those whose instructions or actions may fairly be said to represent official policy. In particular, Plaintiff asserts that dispatcher Angelica Jackson affirmed that she relied only on instructions from Steve McBride, the Chief of Police. Plaintiff argues that the dispatchers, in following the

directions of the Chief of Police, never checked on Plaintiff's medical condition during his thirteen-day period of incarceration.

Defendant, however, asserts that there is no direct causal link between an official custom or policy and the Plaintiff's injury. Defendant maintains that the City has implemented reasonable policies and practices to care for its inmates. For example, dispatchers were instructed to check on inmates every thirty minutes during the day, and every hour after midnight. Likewise, the dispatchers were posted ten to twelve feet from the jail cell at the time of Plaintiff's incarceration. Dispatchers were instructed to dispense medication that had been prescribed to an inmate. Dispatchers were instructed to have an officer or deputy transport an inmate to the hospital in the event the inmate required medical attention. Dispatchers were on duty twenty-four hours a day, seven days a week. Defendant contends that all of these policies and practices of the City demonstrate reasonable concern for the health and well-being of its inmates.

Conceding that these polices and practices may have existed, Plaintiff asserts that they were neither fully implemented nor followed. For example, Plaintiff maintains that no one came to his aid during the thirteen days he spent in jail. Specifically, when Plaintiff requested aspirin, Tylenol or eye drops from the dispatchers, the dispatchers denied Plaintiff's request, and informed Plaintiff that they had no medicine in the jail. Moreover, even after fellow inmates requested that Plaintiff receive medical care, Plaintiff still received no such care. Accordingly, there are genuine issues of material fact surrounding the effectiveness and consistency of the dispatchers' patrol, as well as the implementation of the City's policies and practices.

Based on the existence of genuine issues of material facts, Defendant's Motion for Summary Judgment is due to be denied.

## CONCLUSION

For the reasons elaborated herein, this Court must deny Defendant's Motion for Summary Judgment. It will be done by separate order.

Done this 18th day of September, 2002.

Chief United States District Judge

U.W. Clemon

6